

**SIGNED this 15th day of April, 2016.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-11181-tmd |
| | § | |
| JOSEPH EVAN SOLIS, SR. | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |

**MEMORANDUM OPINION**

The question before the Court is simple: What is the replacement value of the Debtor's 2008 Ford Explorer XLT?

**I.    Background**

The Debtor seeks relief under chapter 13, the wage-earner's reorganization statute. His schedules of assets and liabilities, which he swore to under oath, include a 2008 Ford Explorer XLT with an asserted value of $6,731. The Explorer secures debt of $12,774 owed to Ally Financial. The value of the Explorer matters because the Debtor's chapter 13 plan, which was

1

confirmed on March 28, 2016, will become infeasible if the value of the Explorer is significantly more than the Debtor's proposed value.[1]

Ally Financial filed a proof of claim for a $12,771.32 debt secured by the Explorer. Ally's proof of claim lists the value of the Explorer as $9,925, but Ally did not attach any exhibits supporting this value.

The Debtor now objects to Ally's claim. He does not dispute the claim amount or that the claim is secured by the Explorer. Rather, his objection is limited to the value of the collateral. According to the Debtor, the correct value is $6,731.25. To support this value, the Debtor attached a printout of the NADA Guides price report for the SUV as an exhibit to the objection.

Limited evidence of the Explorer's value was provided at the hearing. The Debtor introduced into evidence—with Ally's consent—price reports from Edmunds.com and photos of the SUV.[2] Ally introduced a price report from the NADA Guides.[3] The Debtor also testified to the condition of the SUV and verified the photos of his SUV. The Debtor's uncontroverted testimony, in conjunction with the photographs, indicated that the SUV has some deep scratches and light damage to both fenders but is mechanically sound. The Debtor had opportunities on cross-examination to affirm or disavow the value asserted in his schedules, but did neither.

---

[1] According to section 1325(a)(5)(B)(ii) of the Bankruptcy Code, the property to be distributed under a chapter 13 plan to the holder of an allowed secured claim must not be less than the amount of the allowed secured claim. According to section 506(a), a claim secured by a Debtor's collateral is an allowed secured claim "to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." To the extent that the Creditor's claim exceeds the value of the collateral, the claim is unsecured. The "hanging paragraph" of section 1325(a) does not apply here because the Debtor's SUV was purchased more than 910 days before the Debtor filed for bankruptcy.

[2] Although Ally's counsel agreed to the admission of the Edmunds price reports, he argued that they were less representative of the value of the Debtor's SUV than the price indicated by the NADA Guides.

[3] The Debtor attached the NADA price report to his objection to claim, but Ally formally introduced the report into evidence.

The NADA and Edmunds reports contain slightly different information. The NADA report provides values for "Rough Trade-in," "Average Trade-in," "Clean Trade-in," and "Clean Retail." The only obvious adjustments applied to those values are for mileage and options. The Edmunds reports provide values for "Trade-in," "Private Party," and "Dealer Retail" with adjustments for optional equipment, color, regional adjustment, mileage, and, importantly, condition. The key difference is that the NADA report provides a retail price estimate for the Debtor's SUV in "Clean" condition while one of the Edmunds reports provides a retail price for the Debtor's SUV in "Average" condition. Unsurprisingly, the reports indicate different amounts—the NADA Clean Retail value favored by Ally is $9,475 while the Edmunds Dealer Retail value for the SUV in Average condition favored by the Debtor is $5,947.

Neither party voiced an objection to the introduction of the NADA or Edmunds reports into evidence[4] or to the Court taking judicial notice of facts not subject to reasonable dispute regarding the reports.[5] According to the website from which the NADA report provided to the Court was obtained, a vehicle in Clean condition under the NADA Guides has no mechanical

---

[4] Rule 803(17) of the Federal Rules of Evidence provides a hearsay exception for "market quotations, lists, directories, or other compilations that are generally relied on by the public or persons in particular occupations." The reason for this exception is the high degree of reliability, the motivation of the publisher to be accurate, and the absence of motivation for the publisher to deceive." Barry Russell, 2 *Bankruptcy Evidence Manual* § 803:30. The Court believes that, with a proper foundation provided by an industry expert, the NADA and Edmunds price reports would be admissible under the FRE 803(17) exception. Indeed, they might be admissible without an expert, given that there is precedent to suggest that both publications are reliable and credible. *E.g.*, *In re Bub*, 502 B.R. 345, 358 (Bankr. E.D.N.Y. 2013) *aff'd sub nom. Bub v. Rockstone Capital, LLC*, 516 B.R. 685 (E.D.N.Y. 2014) (describing Edmunds as a "reputable source"); *In re McElroy*, 339 B.R. 185, 188 (Bankr. C.D. Ill. 2006) (quoting *In re Madsen*, 2001 WL 34076428 (Bankr. C.D.Ill.)) ("Bankruptcy courts in the Central District of Illinois have long recognized the NADA guide as 'the authoritative source that is most relevant and applicable to the valuation" of vehicles in Chapter 13 cases.'"). And both publications have an incentive to be accurate. Here, because there were no objections, the Court will consider the reports.

[5] The Court may take judicial notice of adjudicative facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). In this case, the Court has taken notice only of the adjustment categories provided by the Edmunds and NADA websites.

3

defects, only minor exterior surface scratching, and minimal interior wear. According to the website from which the Edmunds report was obtained, Average condition per Edmunds.com means that the vehicle "[m]ay have a few mechanical and/or cosmetic problems and may require a considerable amount of reconditioning." Based on the Debtor's testimony, the condition of Debtor's SUV is worse than the NADA Clean condition. It falls within the broad Edmunds Average condition, but because the Debtor's SUV has no mechanical issues, the Debtor's SUV is likely better than the typical vehicle of Average condition.

## II. Legal Standard

### A. Valuation under section 506(a)

According to section 506(a)(1) of the Bankruptcy Code, a claim secured by a Debtor's collateral is an allowed secured claim "to the extent of the value of such creditor's interest in the estate's interest in such property . . . ." For individual debtors under chapter 7 or 13, section 506(a)(2) defines the value of personal property collateral as "replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing."[6] Further, "[w]ith respect to property acquired for personal, family, or household purposes, replacement value . . . mean[s] the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."[7] Here, this means the price for which a retail car dealer would agree to sell the Debtor's Ford Explorer in its condition on September 8, 2015.

---

[6] This part of section 506(a)(2) is a codification (at least in part) of the Supreme Court's decision in *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997). *See In re Prewitt*, No. 15-60222, 2015 WL 8306422, at *6 (Bankr. E.D. Tex. 2015) ("The first sentence of § 506(a)(2) codifies Rash in individual chapter 7 and chapter 13 cases by expressly mandating the use of replacement value as the valuation methodology.").

[7] 11 U.S.C. § 506(a)(2).

4

### B. Burden of Proof

Neither the Code nor the Rules specify which party bears the burden of proof regarding value under section 506(a).[8] Based on the context in which the valuation takes place, the burden of proof may lie with the secured creditor, party challenging the value, or involve a burden-shifting framework.[9]

The context here is an objection to claim.[10] Generally, a proof of claim is prima facie evidence of the validity and the amount of the claim.[11] However, if a party in interest objects and provides evidence that is at least as probative as that offered by the proof of claim, the burden shifts to the claimant.[12] The ultimate burden is then on the claimant to prove its claim by the preponderance of the evidence.[13]

---

[8] *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012); *In re Sandrin*, 536 B.R. 309, 315 (Bankr. D. Colo. 2015) (citing 4 *Collier on Bankruptcy* ¶ 506.03[9] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)).

[9] *Heritage Highgate*, 679 F.3d at 139-40.

[10] Arguably, this objection to claim could be considered in the context of the plan confirmation process because the Debtor seeks the valuation to make his plan feasible. *Cf. In re Young*, 390 B.R. 480, 486 (Bankr. D. Me. 2008) (holding that an adversary proceeding that would, in part, value collateral under section 506(a) was part of the plan confirmation process). However, under the *Consolidated Standing Order for Chapter 13 Case Administration for the Austin Division*, No. 15-05, http://www.txwb.uscourts.gov/sites/default/files/files/10-26-2015-Consolidated%20Standing%20Order%20Case%20Admin%20Chp%2013%20Austin.pdf, the plan confirmation process and claims allowance process are separate. The form plan appended to the *Standing Order* allows for Debtor's to move to value collateral as part of the plan confirmation process, but the Debtor chose instead to determine the value of his SUV through the claims allowance process.

[11] Fed. R. Bankr. P. 3001(f).

[12] *In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988); *In re 804 Cong., L.L.C.*, 529 B.R. 213, 219 (Bankr. W.D. Tex. 2015).

[13] *Fid. Holding Co., Ltd.*, 837 F.2d at 698; *804 Cong.*, 529 B.R. at 219. Where substantive law implements a different burden of proof, proving the existence of the claim by a preponderance of the evidence may not require establishing the *elements* of that claim by preponderance of the evidence. For example, if there is a presumption of liability under a statute that can only be rebutted by clear and convincing evidence, equal evidence about the basic facts would mean that the existence of the claim is more likely than not. The burden-shifting in an objection to claim does not modify substantive law regarding the claim. *See Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000).

Analogizing to the objection to claim process, the U.S. Court of Appeals for the Third Circuit adopted a similar burden-shifting framework for valuing collateral in *In re Heritage Highgate, Inc.*[14] The Third Circuit's analysis is persuasive. It makes sense that if the creditor has the burden of proving the amount of the creditor's allowed secured claim, the creditor should also have the burden of proving the value of the collateral from which that amount is determined.

Applying this burden-shifting here, the first question is whether the Debtor produced evidence at least equal in strength to the evidence supporting Ally's proof of claim. The Court must then determine whether the preponderance of the evidence supports a higher value than that claimed by the Debtor.

### III.   Analysis

#### A.   The Debtor's evidence rebutted the prima facie validity of Ally's proof of claim.

Ally's proof of claim contained no documentary support for its asserted value of the Debtor's Ford Explorer. The only exhibits were copies of the sales contract supporting the claim and a Texas Certificate of Title supporting a perfected lien. Where the proof of claim makes an unsupported assertion, an unsupported assertion in response is "at least equal in probative force" to the evidence in the proof of claim.[15] And here the Debtor provided some evidence suggesting a lower value. The burden therefore shifted to Ally to support a higher value.

#### B.   The preponderance of the evidence indicates a value of $6,731.25.

The Court has five pieces of evidence from which to determine the price at which a car dealer would sell the Debtor's SUV, considering its age and condition: the NADA price report,

---

[14] *Heritage Highgate*, 679 F.3d at 139-40.

[15] *In re 804 Cong., L.L.C.*, 529 B.R. 213, 220 (Bankr. W.D. Tex. 2015).

the Edmunds price reports, the Debtor's testimony regarding the condition of the property, pictures of the SUV, and the value sworn to in the schedules. The NADA price report indicates that the Clean Retail value of the SUV is $9,475. The Edmunds price reports indicate that the Dealer Retail price for the SUV in Average condition is $5,947. Both the NADA[16] and Edmunds[17] price reports have been accepted by courts as credible and reliable evidence of the price for which a retail car dealer would sell a vehicle.[18]

Courts have noted that the NADA Clean Retail value typically overstates the replacement value of a debtor's vehicle.[19] The NADA Clean Retail value is an idealized standard that is rarely met by used vehicles before they are reconditioned.[20] Often, courts use the NADA Clean Retail price as the starting point before deducting the cost of repairs to determine value.[21] Others take a

---

[16] *E.g.*, *In re McElroy*, 339 B.R. 185, 188 (Bankr. C.D. Ill. 2006) (quoting *In re Madsen*, 2001 WL 34076428 (Bankr. C.D.Ill.)) ("Bankruptcy courts in the Central District of Illinois have long recognized the NADA guide as 'the authoritative source that is most relevant and applicable to the valuation' of vehicles in Chapter 13 cases.").

[17] *In re Bub*, 502 B.R. 345, 358 (Bankr. E.D.N.Y. 2013) *aff'd sub nom. Bub v. Rockstone Capital, LLC*, 516 B.R. 685 (E.D.N.Y. 2014); *In re Gehring*, No. 11-60611, 2011 WL 2619552, at *3 (Bankr. N.D. Ohio July 1, 2011); *In re Ayres*, No. 09-56695 ASW, 2010 WL 652825, at *6 (Bankr. N.D. Cal. Feb. 16, 2010).

[18] Courts have also found the Kelly Blue Book (KBB) values credible. *E.g., Bub*, 502 B.R. at 358. Determining the relative credibility of these price reports would require expert testimony about the data forming the basis of the report. Nonetheless, the Court finds their use by other courts, and the incentive of the publications to be accurate, indicative of their basic reliability.

[19] *E.g.*, *In re Nance*, 477 B.R. 638, 643 (Bankr. E.D. La. 2012); *In re Mayland*, No. 06-10283, 2006 WL 1476927, at *1 (Bankr. M.D.N.C. May 26, 2006); *see also In re Morales*, 387 B.R. 36, 45 (Bankr. C.D. Cal. 2008) ("In most cases, the showing necessary to justify a downward adjustment from the guide retail value will be minimal because few vehicles have been maintained in the high-quality condition contemplated by the guide retail values.").

[20] *Mayland*, No. 06-10283, 2006 WL 1476927, at *1.

[21] *In re Scott*, 437 B.R. 168, 174 (Bankr. D.N.J. 2010); *Morales*, 387 B.R. at 45; *In re Eddins*, 355 B.R. 849, 852 (Bankr. W.D. Okla. 2006); *In re Ortiz*, No. 06-16243-BKC-RBR, 2007 WL 1176019, at *3 (Bankr. S.D. Fla. Feb. 27, 2007)). Further, assuming competent evidence could be provided, the NADA price should also be adjusted for the lack of warranty that often comes with purchasing a vehicle from a retail car dealer. *Nance*, 477 B.R. at 643 (quoting *In re Nice*, 355 B.R. 554, 557 (Bankr. N.D.W. Va. 2006)); *see also Associates Commercial*

standard set percentage off the NADA value as the starting point.[22] And one bankruptcy court in the Fifth Circuit held that averaging the Clean Retail and Clean Trade-in NADA values best approximated replacement value.[23]

Given the deep scratches and fender damage to the Debtor's SUV, the NADA Clean Retail value plainly overstates the replacement value of the Debtor's SUV. There is no evidence in the record regarding the costs of reconditioning from which the Court could determine its value based on the NADA price report. And the record is also insufficient to determine a percentage reduction in the NADA Clean Retail or to adopt the average of the NADA Clean Retail and Clean Trade-in prices.

But the Edmunds price report adopted by the Debtor might understate the replacement value of the Debtor's SUV. According to the Edmunds website, Average condition may include "a few mechanical and/or cosmetic problems[.]" The Debtor's SUV has deep scratches and some fender damage, but it has no mechanical defects. Although the Debtor's SUV falls under the Average category, it may be in better condition than the typical Average vehicle.

The Court finds that the replacement value of the Debtor's SUV is somewhere between the NADA price and the Edmunds price. Ally did not carry its burden in that it provided no evidence to support an appropriate discount from the NADA Clean Retail value. The Debtor, on the other hand, did swear to a value of $6,731, which is consistent with the idea that a vehicle

---

*Corp. v. Rash*, 520 U.S. 953, 965 n.6 (1997) ("A creditor should not receive portions of the retail price, if any, that reflect the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning.").

[22] *McElroy*, 339 B.R. at 189; *Mayland*, No. 06-10283, 2006 WL 1476927, at *1; *In re Mitchell*, 320 B.R. 687, 689 (Bankr. E.D. Mo. 2005).

[23] *Nance*, 477 B.R. at 643..

8

with no mechanical and a few cosmetic defects should be worth a little more than the Edmunds Average value.[24] Although the value that the Debtor asserted in his schedules is weak evidence, and was rendered even weaker when the Debtor was cross-examined, it is the only basis the Court has to determine where between the NADA and Edmunds prices replacement value falls. And even if the Court construed the Debtor's testimony on cross examination as a rejection of the value the Debtor asserted in his schedules, the result would be the same. Ally had the burden of proving a higher value than the $6,731 alleged in the objection to claim, and did not meet that burden.

## IV. Conclusion

The Court recognizes that the expense of expert testimony will rarely (if ever) be justified to establish the value of a debtor's personal vehicle under section 506(a). A local rule or standing order instituting a simple and uniform approach to establish the presumptive value of a debtor's vehicle may be justified if sought by the bar.[25] In the absence of such a rule, courts need to be

---

[24] It is well established that an owner can testify to value, *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975), though that testimony is usually given little weight absent expertise. *Compare S. Cent. Livestock Dealers v. Sec. State Bank of Hedley*, 614 F.2d 1056, 1061-62 (5th Cir. 1980) (financial officer of feedlot could opine on value just as an owner of a business could opine on the value of a business), *with In re Meeks*, 349 B.R. 19, 22 (Bankr. E.D. Cal. 2006) (allowing the debtors to testify as to the value of their residence, but giving the testimony little weight).

[25] Some bankruptcy courts have done this. *E.g.*, Bankr. Vt. LBR 3012-1(b), http://www.vtb.uscourts.gov/sites/vtb/files/Local_Rules_2012.pdf ("As a starting point, the valuation of motor vehicle collateral will be presumed to be the midpoint between the National Automobile Dealers Association average trade-in value and clean retail value unless: (1) the parties agree to a different value; (2) the debtor or secured creditor presents an appraisal undisputed by the other party; or (3) the value is fixed by the Court as a result of an evidentiary hearing held specifically to determine the value of the particular vehicle"); Bankr. E.D. Mo. LBR 3015-2, http://www.moeb.uscourts.gov/pdfs/local_rules/2015/2015_Local_Rules.pdf ("Absent evidence to the contrary, for purposes of 11 U.S.C. § 506, the Court's Vehicle Valuation Policy shall be 97% of the National Automobile Dealers Association (NADA) (Central Edition) retail value at the time of filing the petition.").

sensitive to the practical constraints on the manner in which disputes are tried.

This dispute was tried in the context of an objection to claim, where the Bankruptcy Code places the ultimate burden of proving the value of collateral on secured creditors. Applying that burden here, the preponderance of the evidence supports a $6,731 value for the Debtor's SUV. Therefore, the Debtor's objection to claim will be sustained through a separate order.